AL HOLIFIELD,

       Plaintiff,

    v.                              Case No. 18-cv-801-pp

GEARLD KULWICH, JOSEPH ZAWIKOWSKI,
SARAH BELAND, CHARLES GRIMM,
BRADLEY JOHNSON, P.O. LEMOS,
RUBEN CORODVA, SCOTT WILSON,
JOSE RAMIREZ, CHIEF EDWARD FLYNN,
CITY OF MILWAUKEE POLICE DEPARTMENT,
and CHIEF DOE,

       Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING
PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3), GRANTING
PLAINTIFF'S MOTION TO WAIVE PARTIAL FILING FEE (DKT. NO. 11), AND
SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

---

On May 24, 2018, the plaintiff filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights by conducting an unlawful search and seizure of him and his home and subjecting him to a false arrest. Dkt. No. 1. He also has filed a motion for leave to proceed without prepaying the filing fee, dkt. no. 2, a motion to appoint counsel, dkt. no. 3, and a motion to waive his initial partial filing fee, dkt. no. 11. This decision resolves the plaintiff's motions and screens the complaint.

**I.     Motion to Proceed without Prepayment of the Filing Fee**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee, if they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee.

On June 6, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $5.43. Dkt. No. 7. The plaintiff subsequently filed a motion asking the court to allow him to use the funds in his release account to pay the initial partial filing fee, dkt. no. 8, which the court denied on July 20, 2018 because by that time plaintiff had been released from prison, dkt. no. 10.

The plaintiff since has filed a motion asking the court to waive the initial partial filing fee. Dkt. No. 11. He states that he is unemployed, has no assets and is otherwise indigent. Id. at 1-2.  Based on this information, the court concludes that the plaintiff doesn't have the money to pay the initial partial filing fee. The court will grant the plaintiff's motion to waive the initial partial filing fee, dkt. no. 11, and grant his motion to proceed without prepaying the filing fee, dkt. no. 2. Although the plaintiff is no longer incarcerated, he must still pay the filing fee over time, as he is able.

## II.     Motion to Appoint Counsel

In his motion to appoint counsel, the plaintiff states that the case is too factually and legally difficult for him as a layperson to coherently present because it involves the officers' alleged manipulation of their body cameras and because of his "impending" release from prison.[1] Dkt. No. 3 at 1. He says that counsel will be able to assist him with recording depositions, securing a location for those deposition, serving subpoenas, obtaining documents from the defendants, hiring an investigator and doing research. Id. at 2. He further indicates that he has been unsuccessful in getting *pro bono* counsel on his own and that he can't afford to hire a lawyer. Id. at 1.

A court has discretion in a civil case to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). After a plaintiff demonstrates he has made a reasonable attempt to hire counsel on his own, the court will decide "whether the difficulty of the case–factually and legally–exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt v. Mote, 503 F.3d 647, 655 (7th Cir. 2007)). To decide that, the court looks not only at a plaintiff's ability to try his case but also at his ability

---

[1] The plaintiff was released to extended supervision on July 3, 2018. See https://offender.doc.state.wi.us/lop/home.do (last visited Sept. 24, 2018).

3

to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff did not attach to his motion any documents showing that he has attempted to hire counsel on his own, but the court will take him at his word and find that he has made a reasonable attempt to secure counsel. The court will not, however, appoint a lawyer for the plaintiff at this point. The plaintiff's complaint and other communications with the court show that he has a good grasp of his claims and that he can clearly communicate why he believes he is entitled to the relief he seeks. The plaintiff's claim itself is not factually complex—he has explained that the defendants stopped him for no reason and searched him without probable cause, and that they arrested him without giving him his Miranda warnings. The concerns the plaintiff expresses in his motion have to do with collecting the evidence he needs to support his claims, but he'll be able to ask the defendants for that evidence once the case gets to the discovery stage.

The next step in the process is for the court to serve the complaint on the defendants. Once the defendants receive the complaint, they will need to answer or respond to it in some way. After they do that, the court will issue a scheduling order with deadlines for completing the exchange of discovery and filing dispositive motions. At that time, the plaintiff will be able to ask for the evidence he needs. For example, he may send the defendants written questions (interrogatories) and ask them to produce documents that he believes support

his version of the events. <u>See</u> Fed. R. Civ. P. 33, 34. The court includes with this order a pamphlet entitled "Answers to Prisoner Litigants' Common Questions" and copies of Federal Rules of Civil Procedure Rule 26 (Duty to Disclose; General Provisions Governing Discovery), Federal Rules of Civil Procedure Rule 33 (Interrogatories to Parties), and Federal Rules of Civil Procedure Rule 34 (Producing Documents, Electronically Stored Information, and Tangible Things). These will be helpful to the plaintiff once the case reaches the discovery phase. But right now, there is nothing he needs to do.

Finally, the court notes that the plaintiff isn't in custody any longer. Unlike plaintiffs who are in custody, he can go to a law library (or a regular library) and spend as much time as he wants preparing papers and doing research. He does not need to worry about prison officials taking his legal papers, or being transferred to another facility, or losing law library time because of segregation.

The court understands that it would be very helpful to the plaintiff to have a lawyer to help him, but "deciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" <u>Henderson v. Ghosh</u>, 755 F.3d 559, 564 (7th Cir. 2014) (quoting <u>Olson v. Morgan</u>, 750 F.3d 708, 711 (7th Cir. 2014)). That is why the court must analyze each case when determining whether a plaintiff is able to proceed on his own. The court concludes that the plaintiff is capable of

5

representing himself right now, so it will deny his motion without prejudice. If,
later in the case, circumstances change, the plaintiff can renew his motion for
an appointed lawyer.

**III.    Screening the Complaint**

    A.    <u>Screening Standard</u>

The law requires the court to screen complaints brought by prisoners
seeking relief against a governmental entity or officer or employee of a
governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint,
or part of it, if the prisoner has raised claims that are legally "frivolous or
malicious," that fail to state a claim upon which relief may be granted, or that
seek monetary relief from a defendant who is immune from such relief. 28
U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter,
accepted as true, "that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,
678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).
"A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 556). The
complaint's allegations "must be enough to raise a right to relief above the
speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, district courts follow
the principles in <u>Twombly</u>, by first "identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. Second, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.    Factual Allegations

The plaintiff alleges that on June 22, 2016, while he and his friend Brian Avery were in Avery's car parked outside of the plaintiff's home, he was gathering his groceries to get out of the car. Dkt. No. 1 at ¶¶1-2. The plaintiff states that officers Gerald Kulwich, Joseph Zawikowski, and Sarah Beland surrounded the vehicle—Zawikowski at the driver side door and Kulwich and Beland at the passenger side door. Id. at ¶3. The plaintiff says he tried to open the passenger door to get out of the car, but that he couldn't because  Kulwich

was standing right in front of the door, demanding the plaintiff's ID card. Id. at ¶4. The plaintiff says he turned over the card. Id.

The plaintiff asserts that Kulwich never told the plaintiff why he'd stopped the car. Id. at ¶5. He told Beland and Kulwich that he lived in the house where the car was parked, and he told them that he was getting out of the car to go into his house, but they wouldn't let him out. Id. The plaintiff says that Kulwich "immediately" pulled him out of the car and put him in handcuffs, with no probable cause. Id. at ¶6. Kulwich put his hands in the plaintiff's pants pockets, searching them—again, without probable cause. Id. Kulwich "alleged" that he recovered cocaine out of the plaintiff's front, right pants pocket. Id. The plaintiff was then "thrown" into the back seat of the police squad and arrested. Id.

The plaintiff says that at some point before he was removed from Avery's car, Zawikowski "was interviewing Brian Avery regarding the police (Zawikowski) smelling the odor of marijuana coming from the inside of Brian Avery's vehicle." Id. at ¶9. He also says that Zawikowski "saw a marijuana blunt sitting in Avery's ashtray." Id. The plaintiff claims that he overheard Avery telling Zawikowski that Avery had smoked marijuana earlier that day. Id. at ¶10. The plaintiff states that even though he was still in the passenger seat when Avery made this admission, all the officers ignored the admission and "targeted" him. Id. at ¶11.

The plaintiff also says that while he was sitting inside the squad car, Beland asked permission to search his home. Id. at ¶12. When the plaintiff refused, Beland provided him with a consent form for the search. Id. When the plaintiff refused to sign the form, "Kulwich then removed the plaintiff's house keys from inside the plaintiff's pants pocket." Id. at ¶¶12-13. The plaintiff says Kulwich, along with Beland, Zawikowski, police officers Bradly Johnson, Ruben Corodva, Sgt. Charles Grimm and John Doe police officers searched his home. Id. at ¶14. The plaintiff alleges that the search "was unreasonable and unnecessary with excessive force," and that the officers "damaged his property and left his residence unlocked causing [it] to be burglarized." Id. at ¶15.

The plaintiff says that he asked for his house keys to be returned to him and placed in his property at the jail. Id. Kulwich and Beland "lied" and said that the keys were placed in his property, but the plaintiff says the keys never were returned to him. Id. The plaintiff says his landlord evicted him "due to the police raid and property damage caused" by the defendants, and that he lost "money, 2 mink coats, jewelry, clothing, electronics and security deposits and moving costs." Id. at ¶16.

The plaintiff alleges that Kulwich, Beland and Zawikowski conspired to "cover-up the civil rights violations" and to have "the plaintiff falsely arrested." Id. at ¶17. He states that they "concealed exculpatory material evidence of Avery's admission" from the court commissioner, manipulating the probable cause determination. Id. at ¶19. He says the defendants manipulated their

9

body cameras to mute Avery's admissions, did not "document what Avery [] told [] police," and did not "communicate with one another during the investigation." Id. at ¶20. He asserts that, while Avery was originally charged with violating his parole and possession of marijuana, when Avery and the plaintiff were transferred to Milwaukee County Jail on June 23, 2016, the charges against Avery were dropped "to make it appear that police may have had probable cause to suspect the [plaintiff] of possessing the marijuana." Id. at ¶23. He alleges that there was a conspiracy, so that Zawikowski would not have to "file a police report documenting Avery's admissions." Id.

The plaintiff alleges that Kulwich, Beland and Zawikowski conspired with each other to cover up these alleged civil rights violations, in retaliation for his having filed a writ of *habeas corpus* alleging that in 2010, members of the Milwaukee Police Department set him up and had him wrongly convicted. Id. at ¶18. He says the "named defendants" retaliated against him for naming them in the writ (which he indicates is still pending), as well as for the fact that he would not become an informant for a neighborhood task force. Id. at ¶21. He believes that he was targeted because he is black, and lives in Milwaukee's inner city. Id. at ¶22.

The plaintiff alleges that former police chief Edward Flynn and the Milwaukee Police Department failed to train the officers. Id. at ¶24. The plaintiff says he is suing all the defendants in their individual and official

capacities, and that he has shown "a 'deliberate indifference' on [the] part of municipal policy and customs." Id.

The plaintiff seeks compensatory and punitive damages of $5,000,000. Id. at page 10.

A.    Analysis

The plaintiff named Kulwich, Zawikoswki, Beland, Grimm, Johnson, Kemos, Cordova, Scott Wilson, Jose Ramirez, the City of Milwaukee Police Department, (former) Chief Edward Flynn and "new chief of police department John Doe Chief" as defendants. Id. at 1.

1.    *Milwaukee Police Department*

The plaintiff cannot sue the Milwaukee Police Department under §1983 for civil rights violations. Section 1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The Milwaukee Police Department is not a person—it is not an individual subject to suit under §1983. Powell v. Cook Cty. Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); 42 U.S.C. §1983.

Further, a defendant in a federal lawsuit must have the legal capacity to be sued, and state law determines whether an entity has that capacity. Webb v. Franklin Cty. Jail, Case No. 16-cv-1284, 2017 WL 914736 at *2 (S.D. Ill. Mar. 8, 2017); Fed. R. Civ. P. 17(b). Section 62.50 of the Wisconsin Statutes governs the City of Milwaukee's police department, and it does not authorize the police department to sue or be sued. See Grow v. City of Milwaukee, 84 F. Supp. 2d

990 (E.D. Wis. 2000) (abrogated on other grounds by <u>Driebel v. City of Milwaukee</u>, 298 F.3d 622 (7th Cir. 2002)). The court will dismiss the Milwaukee Police Department as a defendant.

### 2. *Kemos, Wilson, Ramirez, Flynn and John Doe Chief*

The plaintiff has sued PO Kemos, Scott Wilson and Jose Ramirez, but he does not mention them anywhere in the body of his complaint. He has not alleged that any of these three people did anything to violate his constitutional rights. "An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." <u>Starzenski v. City of Elkhart</u>, 87 F.3d 872, 879 (7th Cir. 1996) (citations omitted); <u>George v. Smith</u>, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). Because the plaintiff has not made any allegations against these individuals, the court will dismiss Kemos, Wilson and Ramirez as defendants.

The plaintiff alleges that former police chief Edward Flynn failed to train the officers who allegedly violated his constitutional rights. He also has named "John Doe chief"—presumably the current chief of the Milwaukee Police Department, Alfonso Morales. It may be that the plaintiff believes that these two men should be held liable because they supervised the officers whom he alleged violated his rights. If that is the reason the plaintiff sued the chiefs, he cannot proceed on that theory. Under §1983, "[s]upervisors are not liable for the errors of their subordinates." <u>Riordan v. Kempiners</u>, 831 F.2d 690, 695 (7th

Cir. 1987); <u>Soderbeck v. Burnett Cty.</u>, 752 F.2d 285, 293 (7th Cir. 1985)). "The 'should have known' theory . . is both legally deficient and inconsistent with the demands of effective administration." <u>Id.</u> Again, this is because a plaintiff cannot hold someone liable for violating his constitutional rights under §1983 unless that person was personally involved in violating the plaintiff's rights. <u>Morfin v. City of East Chi.</u>, 349 F.3d 989, 1001 (7th Cir. 2003) (citing <u>Lanigan v. Vill. of E. Hazel Crest</u>, 110 F.3d 467-71 (7th Cir. 1999)).

The plaintiff also alleges that former chief Flynn failed to train the officers the plaintiff alleges violated his civil rights. A plaintiff who wishes to bring a failure-to-train claim must bring that claim against the municipality responsible for conducting that training. While §1983 allows plaintiffs to sue "persons," "[u]nder *Monell v. Dep't of Soc. Serv's*, 436 U.S. 658, 690 (1978), municipalities and other local governmental units are 'among those persons to whom § 1983 applies.'" <u>Brown v. Blanchard</u>, 31 F. Supp. 3d 1003, 1013 (E.D. Wis. 2014). Even if the plaintiff had brought this failure-to-train claim against an appropriate municipality, however, he has not alleged sufficient facts to allow him to proceed. "A municipality will be held liable under a failure-to-train theory only when the inadequacy in training amounts to deliberate indifference to the rights of the individuals with whom the officers come into contact." <u>Id.</u> (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)). The plaintiff has not alleged the "repeated pattern of constitutional violations" that "makes 'the need

for further training . . . plainly obvious to the policymakers.'" Id. (quoting Jenkins v. Bartlett, 487 F.3d 482, 492 (7th Cir. 2007)).

The court will dismiss former chief Edward Flynn and John Doe chief as defendants.

### 3. *Kulwich, Zawokowski, Beland, Grimm, Johnson, Cordova and John Doe officers*

#### a. Heck Barred Claims

As a result of the June 21, 2016 events the plaintiff describes in the complaint, he pled guilty to and was convicted of one count of possession with intent to deliver a controlled substance (cocaine) (1 gram or less). See State of Wisconsin v. Al Antonio Holifield, Jr., Case No. 2016CF002721 (Milwaukee County Circuit Court), https://wcca.wicourts.gov. Because the plaintiff's claims involve events that led to a criminal conviction, the court must consider whether any of his claims are barred under the doctrine the Supreme Court set in Heck v. Humphrey, 512 U.S. 477, 487 (1994).

Heck bars civil claims brought under §1983 that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence." Heck, 512 U.S. at 487. In announcing this rule, the Supreme Court explained that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . ." Id. at 486. The Heck Court concluded that,

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that had *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 486-87.

The plaintiff appears to allege that Kulwich, Zawikowski and Beland trumped up false evidence against him (ignoring Avery's admission that he'd been smoking marijuana and targeting the plaintiff for no reason), and that Kulwich arrested him without probable cause, all in violation of his Fourth Amendment rights. A claim of "[w]rongful arrest or detention" creates a "wrongful-seizure claim," "and the constitutional objection is to wrongful custody . . . ." Stone v. Wright, 734 F. App'x 989, 989 (7th Cir. 2018) (citing Manuel v. City of Joliet, Ill., ___ U.S. ___, 137 S. Ct. 911, 917-20 (2017)). But if this court were to conclude that the officers arrested the plaintiff without probable cause, or arrested him based on false or manipulated evidence, that finding would

invalidate the plaintiff's criminal conviction. The plaintiff cannot proceed on this claim unless he can show that his underlying criminal conviction has been overturned or otherwise invalidated.

On August 23, 2017, the plaintiff filed a notice of intent to seek post-conviction relief from his conviction and sentence. The court of appeals has extended the deadline for the plaintiff to file his request for post-conviction relief several times; currently, the deadline is February 8, 2019. See Wisconsin v. Holifield, Case No. 2016CF002721 (Milwaukee County Circuit Court), https://wcca.wicourts.gov/. Because the plaintiff's conviction has not been overturned or invalidated, he cannot pursue his wrongful/false arrest claim in federal court under §1983.

The plaintiff also claims that all the remaining officers—Kulwich, Zawikowski, Beland, Grimm, Johnson and Cordova—unlawfully searched his person and his residence. A claim that a defendant conducted an illegal search or seizure, even if successful, would not "necessarily" invalidate the plaintiff's conviction. See Easterling v. Moeller, 334 F. App'x 22, 23-24 (7th Cir. 2009) (collecting cases). "The Court of Appeals for the Seventh Circuit has stated repeatedly that most Fourth Amendment claims can go forward despite the rule of Heck." Gerhartz v. Richert, No. 12-CV-731, 2013 WL 4498752, at *5 (E.D. Wis. Aug. 20, 2013). This is particularly true in a case like the plaintiff's, where he was convicted because of a guilty plea, which means that "the validity of that conviction cannot be affected by an alleged Fourth Amendment violation

16

because the conviction does not rest in any way on evidence that may have been improperly seized." <u>Easterling</u>, 334 F. App'x at 24 (quoting <u>Haring v. Prosies</u>, 462 U.S. 306, 321 (1983)).

Whether success on a Fourth Amendment claim in a civil action would be inconsistent with the plaintiff's criminal conviction, barring the civil claim under <u>Heck</u>, depends on the facts of the Fourth Amendment claim, and the facts of the case. <u>Brown v. City of Milwaukee Police Dep't</u>, No. 05C390C, 2005 WL 1923113, at *5 (W.D. Wis. Aug. 9, 2005).

At this preliminary stage of the case, the court does not have enough information to decide whether the plaintiff's Fourth Amendment search-and-seizure claims are <u>Heck</u> barred. The plaintiff does not say whether the drugs Kulwich claimed to have found in his pocket were the reason he decided to plead guilty. He does not explain what, if anything, the officers found when they searched his residence, or whether anything they found in his residence caused him to plead guilty. At this early stage, then, the plaintiff may proceed on Fourth Amendment search-and-seizure claims if he has alleged sufficient facts to support those claims.

b.     Search of the Plaintiff

First, the plaintiff asserts that the officers did not have probable cause to search him. The Seventh Circuit has noted that the odor of marijuana alone "'can provide probable cause to believe that marijuana is present in a particular place'" and thus justify a search. <u>United States v. Paige</u>, 870 F.3d

693, 700 (7th Cir. 2017) (quoting United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004)). Officers who have probable cause to search a vehicle have probable cause to search the vehicle's passengers and belongings because they are "'capable of concealing the object of the search.'" United States v. Desotell, No. 17-CR-111, 2018 WL 1885675, at *4 (E.D. Wis. Apr. 19, 2018) (quoting Wyoming v. Houghton, 526 U.S. 295, 307 (1999)); see also United States v. Gary, 790 F.3d 704, 707 (7th Cir. 2015) (quoting Maryland v. Pringle, 540 U.S. 366, 373 (2003)) (A passenger in a car "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing.").

The plaintiff asserts that not only did officer Zawikowski say he smelled the "odor of marijuana" coming from the vehicle, but that he also saw the blunt in the car's ashtray. These facts provided probable cause for the officers to search the car, its passengers and their belongings. The plaintiff makes much of the fact that it was Avery who admitted he'd been smoking marijuana that day, and that the blunt belonged to Avery. This may be, but regardless of who caused the car to smell like marijuana, or who owned the blunt, those two things gave the officers probable cause to search the car and its passengers. The plaintiff's own version of the facts demonstrates that he does not have a Fourth Amendment claim for the search of his person.

c.    Search of the Plaintiff's Home

The plaintiff alleges that the defendants unlawfully searched his home, then left it unlocked and in shambles, which allowed someone to burglarize the home.

The plaintiff alleges that the officers searched his home even though he refused to give his consent. He says they took his keys from him without his permission. According to the plaintiff, the officers had no reason to search his home. Although these are bare allegations, they are enough to allow the plaintiff to proceed on a claim that the officers searched his residence in violation of the fourth Amendment.

The Fourth Amendment requires that law enforcement officers conduct searches in a reasonable manner. Davis v. Schott, No. 17-CV-1355-JPS, 2017 WL 4792245, at *4 (E.D. Wis. Oct. 23, 2017) (citing Bell v. Wolfish, 441 U.S. 520, 560 (1979)). The plaintiff alleges that the officers damaged the house, left it unlocked so that it could be burglarized and caused him to be evicted.

At this stage, the plaintiff has alleged sufficient facts to allow him to proceed on a claim that officers Kulwich, Zawikowski, Beland, Johnson, Corodva, Grimm and John Doe officers searched his residence in violation of the Fourth Amendment.

Because the plaintiff does not know the name of the John Doe police officers he has been allowed to proceed against, the court will allow the plaintiff

to conduct discovery for the limited purpose of helping him identify the real name of the John Doe defendants.

After the defendants' attorney files an appearance, the plaintiff may serve discovery on the defendants (by mailing it to their attorney at the address in his notice of appearance) to get information that will help him identify the real names of the John Doe defendants. For example, the plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34.

After the plaintiff identifies the real names of the John Doe officers who participated in the search of his home, he must file a motion to substitute the real names for the John Doe placeholder. Once the plaintiff identifies the John Doe defendants and those defendants have had an opportunity to respond to the complaint, the court will issue a scheduling order with deadlines for the completion of all other discovery and for filing dispositive motions. The plaintiff must not start the discovery process for all other discovery until after all the defendants have been identified, have filed their answer, and the court has issued a scheduling order.

The plaintiff must identify the real names of the John Doe defendants, or send the court a letter asking for more time to do so, by March 15, 2019. If the court does not receive either the real names of the John Doe defendants or a letter from the plaintiff asking for more time by the end of the day on March 15,

2019, the court may dismiss the plaintiff's claim against those defendants. See Civil L.R. 41(c).

### d. Retaliation Claim

The plaintiff claims that Kulwich, Zawikowski and Beland unlawfully stopped, searched and arrested him in retaliation for the plaintiff refusing to become a police informant and for his filing of a writ of *habeas corpus* implicating them in what he alleges was a wrongful 2010 conviction.

For the plaintiff to state a retaliation claim, he must show that he engaged in an act protected by the Constitution, that he suffered a deprivation likely to prevent future protected activities and that there was a causal connection between the two. Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010) (citing Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). A person has a constitutional right to refuse to be an informant. Wooley v. Maynard, 430 U.S. 705, 714 (1977) (First Amendment right to freedom of thought encompasses "the right to refrain from speaking at all"). A person also has a First Amendment right "to petition the government for redress of grievances," which "extends to the courts in general and applies to litigation in particular." Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008).

The plaintiff has alleged that he exercised both his right to refrain from speaking (by refusing to become an informant) and to speak (by filing a *habeas* petition). He has alleged that Kulwich, Zawikowski and Beland illegally stopped and searched him, and searched his home, thus depriving him of his rights in

a way that might chill his future exercise of such rights. And he has alleged that the reason the defendants deprived him of his rights was in retaliation for his exercising his rights to free thought and speech. The court finds that the plaintiff has stated sufficient facts to allow him to proceed on a First Amendment retaliation claim against Kulwich, Zawikowski and Beland.

     e.     Fourteenth Amendment Equal Protection Claim

Finally, the plaintiff alleges that Kulwich, Zawikowski and Beland targeted him based on his race, in violation of the Equal Protection Clause of the Fourteenth Amendment. "Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." Sow v. Fortville Police Dep't., 636 F.3d 293, 303 (7th Cir. 2011) (citing Chavez v. Ill. State Police, 251 F.3d 612, 635 (7th Cir. 2001)). "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." Chavez, 251 F.3d at 635-36. The plaintiff must allege that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class and that he was treated differently from members of the unprotected class. Id. at 636.

The plaintiff has alleged that he is a member of a protected class, by alleging that he is African American and that he is male. He has not, however, alleged that he is otherwise similarly situated to other African American men, and he has not alleged how he was treated differently from non-African American men. For example, he does not describe Avery's race or ethnicity. He

does not argue that Avery was of a different race, and thus that the officers treated the plaintiff differently than Avery due to the difference in their races. He does not allege that there were men of other races whom these officers did not search, despite similar factual circumstances. The court will not allow the plaintiff to proceed on an equal protection claim.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES without prejudice** the plaintiff's motion to appoint counsel. Dkt. No. 3.

The court **GRANTS** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 11.

The court **DISMISSES** defendants City of Milwaukee Police Department, PO Kemos, Scott Wilson, Jose Ramirez, Chief Edward Flynn and Chief.

The court **ORDERS** the plaintiff to identify the real names of the John Doe defendants or file a letter explaining why he is unable to do so in time for the court to receive the information by the end of the day on **March 15, 2019.**

The court **ORDERS** the United States Marshal to serve a copy of the complaint and this order on defendants Gearld Kulwich, Joseph Zawikowski, Sarah Beland, Bradley Johnson, Ruben Corodva and Charles Grimm under Federal Rule of Civil Procedure 4. Congress requires the Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although

Congress requires the court to order service by the Marshals Service, it has not made any provision for either the court or the Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Gearld Kulwich, Joseph Zawikowski, Sarah Beland, Bradley Johnson, Ruben Corodva and Charles Grimm to file a responsive pleading to the complaint.

The court **ORDERS** that the plaintiff must pay the $350 filing fee as he is able. The plaintiff may pay in person at the clerk's office, 517 East Wisconsin Avenue, Room 362, Milwaukee, Wisconsin 53202, between the hours of 8:30 a.m. and 4:30 p.m. Monday through Friday. He may pay by mail, by mailing a check, money order or cashier's check to "Clerk, U.S. District Court," at that same address. He may pay by credit card over the phone, by calling 414-297-3417 and asking for the cashier. He should identify his payments with the name of the case and the case number.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for all pretrial proceedings.

The court **ORDERS** that the parties shall not begin all other discovery until after the court enters a scheduling order with deadlines for such discovery and dispositive motions.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 22nd day of January, 2019.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**